No. 84.—John Banks, plaintiff in error, *vs.* Julius R. Clapp, defendant.

[1.] A, being insolvent, executed an assignment to B, of notes and accounts to secure his debt, of twice its amount, with authority to collect and grant receipts ; and in trust that all collections should go to extinguish his debt; and if, after paying that, principal and interest, and all expenses incurred in collecting, there remained any surplus of money or effects in his hands,

Banks *vs.* Clapp.

that surplus should be subject to A's order: *Held*, that upon its face, this assignment is not void, under the Act of 1818.

[2.] The case of *Carey vs. Giles* reviewed and affirmed.

[3.] The conveyance of effects in amount larger than the debt to be paid' does not make the assignment void, under the Act of 1818; but it is a badge of fraud, to be considered by the Jury.

[4.] A stipulation in the deed, that any surplus that 'may remain shall be subject to the order of the grantor, will not make it void under the Act of 1818.

[5.] That which, under the Act of 1818, will invalidate an assignment, is a trust created for the benefit of the assignor, or some person appointed by him.

[6.] Although an assignment upon its face, may be sustained, yet whether the assignor intended to create such a trust, is a fact to be submitted to the Jury, upon such evidence, in connection with the deed, as the parties may command, and as, according to the usual rules, is admissible.

Traverse of answer of garnishee. Tried in Muscogee Superior Court, before Judge IVERSON. November Term, 1852.

This case was tried on the answer of the garnishee, the defendant in error, and the traverse of the plaintiff in error. The defendant in error proved that Lively & Clapp were indebted to him, by notes, for borrowed money, for the sum of thirtynine hundred and twenty-one dollars and 8 cents. The plaintiff in error, by cross-examination, proved that Lively & Clapp had failed and closed doors, and were unable to pay their debts; that the conveyance or assignment executed by Lively & Clapp to defendant in error, contained all the property of Lively & Clapp, at the time of the execution of the same, except some goods, which were, a few days thereafter, transferred to Hall & Deblois, to secure a debt due them; that Lively and Clapp were indebted to the plaintiff in error, at the time of the execution of said conveyance, some seven or eight thousand dollars, and various amounts to divers other persons.

The defendant in error then introduced and read in evidence, a deed of assignment or conveyance, by Lively & Clapp, to him, dated the 6th day of August, 1851, transferring and assigning open accounts due the said Lively and Clapp, amounting to the sum of three thousand seven hundred and seventy-five

dollars, and certain promissory notes and due-bills, due said Lively & Clapp, for about the sum of nine hundred and seventy-one dollars, " with full power and authority to collect, in any manner he may see proper, the said notes and accounts, and to receipt for the same, and to have possession and control of the books which contain the said accounts, at large, and to enter said credits on said books, for any amount received by him, in collecting said accounts, which shall be good and valid, to all intents and purposes whatever.

In trust that all amounts which may have been collected and received by the said J. R. Clapp, on said accounts and notes, shall go to the credit of the said demands above specified, as due by said Lively & Clapp, to said J. R. Clapp; and when the said J. R. Clapp shall have collected an amount sufficient on said notes and accounts to pay off and discharge the principal and interest of said demand due by said Lively & Clapp to J. R. Clapp, and to pay all expenses, fees and costs which may accrue or be incurred by the said J. R. Clapp, in the collection of the same; then, if there shall any money remain in his hands, or any of said notes and accounts remain uncollected, the same shall be subject to the order of said Lively & Clapp."

It also appeared by the answer of garnishee, which was not disproved, that Lively & Clapp had drawn orders on him for more than the amount of such balance, which orders he had accepted before the service of the summons of garnishment.

The testimony having closed, the counsel for plaintiff in error requested the Court to charge the Jury that the conveyance of Lively & Clapp to Julius R. Clapp, was null and void; which charge the Court refused to give, and on the contrary, charged the Jury that the said conveyance was not contrary to the Act of 1818, and good and valid in law, if not made to hinder and delay creditors. To which refusal and charge as given, the counsel for plaintiff in error excepted, and assigned the same as error.

WM. DOUGHERTY, for plaintiff in error.

WILEY WILLIAMS, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] We are called to inquire whether the assignment exhibited in this bill of exceptions is void, under the Act of 1818. This is the only question upon which the judgment of this Court is invoked. It is of easy determination, because it is substantially the same with that made in *Carey vs. Giles.* The deed, in this case, in no particular in which any principle is involved, differs from the instrument in that case. Counsel for the plaintiff in error held that the two were distinguishable. We have given them both a careful consideration, and we do not find that this deed can give rise to a single legal inquiry touching its validity, which was not made on the hearing of *Carey vs. Giles.*

[2.] The assignment in *Carey vs. Giles* was sustained, after able argument. So, also, must this deed be sustained. It would be an unnecessary labor now to repeat the reasons upon which I sought to sustain the judgment in that case, or to quote again the authorities there referred to. Both are to be seen in 10 *Geo. Reports,* 9. All that is now necessary is to show the identity of the two deeds. And whilst I admit that there is not a *literal,* yet I insist that there is a *legal* identity between them. The instrument upon which our judgment was passed in *Carey vs. Giles,* was in the form of a receipt, made by Col. Seaborn Jones, President of the Bank of Columbus, to L. Atkinson, Cashier of the Bank of Macon; to which was appended a list of the notes transferred, and is in the following words:

"Received from L. Atkinson, Cashier of the Bank of Macon, an order on N. Barker, Cashier of the branch bank of the State of Georgia, for the notes of which the within is a correct list, and I promise to account to him for those received from him, after paying out of them the sum of seventeen thousand eight hundred and sixty-six dollars, and twenty-eight cents, and interest from 27th instant, and two per cent. for the difference in exchange between said notes and specie." Upon the order

thus receipted, for the schedule of notes were delivered by N. Barker to Col. Jones ; the receipt, therefore, was the assignment, and contains the evidence of the terms and stipulations upon which it was made. In his instructions to the Jury, the presiding Judge pronounced upon this assignment, the following opinion: "If, at the time of the transfer, the Bank of Macon was insolvent, and the Bank of Macon transferred to the Bank of Columbus, in payment of its indebtedness, a larger amount than was reasonably sufficient for that purpose, (of which the Jury are to judge,) and agreed to return to the Bank of Macon any surplus which remained, after payment of its indebtedness to the Bank of Columbus, then the transfer was fraudulent, and the Jury must so decree." By *fraudulent*, as is apparent upon the face of the case, and admitted upon all hands, the Court meant a fraud upon the Act of 1818.

[3.] What then was asserted by the Court, and claimed to be the law by the counsel who argued to sustain the charge, was, that the assignment was void, if the Bank of Macon being insolvent, had transferred to the Bank of Columbus, in payment of its indebtedness, a larger amount than was reasonably sufficient for that purpose, and had stipulated for a return of any surplus which might remain. In other words, the assignment was void, for two reasons: First, because a larger amount was transferred than was reasonably sufficient to pay the debt; and, second, because there was a stipulation that the balance, if any, should be returned to the assignor. We held, against the Court and the counsel, that these things being so, the assignment was not, in the judgment of the law, void, under the Act of 1818, or any other law of force in Georgia. The great weight of the argument against this assignment, it may be well to remark, was directed against what counsel evidently believed its most vulnerable point, to wit: the agreement on the part of the creditor to return the surplus to the debtor. This was held, by them, to be a *trust* for the benefit of the debtor, in the teeth of the Act of 1818. So, also, the burden of the argument against the deed, in the case at bar, was upon a like agreement therein— alike in every element of a legal judgment, although different in

terms. I now proceed, with a view to an intelligible parallelism, to state the provisions of the assignment made by Lively & Clapp, to the defendant in error, Julius R. Clapp.

It recites the indebtedness of the assignors to J. R. Clapp, setting forth the amount in detail; it then, in consideration of that indebtedness, and of five dollars, transfers to him a schedule of notes and accounts, amounting to some eight thousand dollars, with express power to control the books of the firm, collect and grant discharges. It then declares the transfer to be *in trust;* that the amount collected shall be applied to the payment of their indebtedness to him; and if, after paying his claims, with interest, and all expenses, fees and costs, which might be incurred in the collection of the notes and accounts, there should remain in his hands any money, or notes and accounts uncollected, that the same should be subject to the order of the assignors. This is the deed.

Here, then, we have a transfer, by an insolvent or failing firm, of effects to a creditor to pay his debt; and to do this out of the notes and accounts transferred, the more readily, he is expressly clothed with power to collect and give receipts. So in the case of *Carey & Giles* there was a transfer of effects, (a schedule of notes) by the Bank of Macon to the Bank of Columbus, to pay a debt due by the former to the latter. Thus far, by all our rulings, neither assignment is obnoxious to the Act of 1818, for we have held from the beginning, that that Act does not prohibit the payment of one or more creditors, to the exclusion of others, provided the assignment contains no trust for the benefit of the debtor, or others appointed by him. Lively & Clapp's deed provides, that if, after paying himself principal and interest and all the costs of collection, there should be a balance of money, or any notes and accounts left in the hands of J. R. Clapp, then that balance should be subject to their order. In the instrument which the Bank of Columbus gave to the Bank of Macon, the former agrees to *account* to the latter for any balance after payment of the debt, and two per cent. for the difference in exchange between the notes and specie. In both, then, the assignor stipulates that the balance, if

any, should return to him; in this case, the stipulation is, that the balance shall be subject to his order. In *Carey and Giles*, the stipulation is, that the creditor shall account to him for the balance. In the former case, we held that the promise to account, or the stipulation that the balance should return to the assignor, did not make the assignment different from what it would have been by operation of law, without such stipulation; that the balance, if any, would, with or without such stipulation, belong to the assignor, and would be subject, like any other property of his, to the payment of his debts due to other creditors; and that they could reach it in the hands of the transferree, by bill in Equity, or by process of garnishment'; and therefore, that there was no trust for the benefit of the assignor, or any other person, and the transaction was not condemned by the Act of 1818.

[3.] For the same reasons, we are obliged to hold that the stipulation in this case that the balance should be subject to the order of Lively & Clapp, does not bring the deed under the condemnation of the Act of 1818. Let it be remembered, that we are now pronouncing upon the legal effect of this deed on its face, and with our eyes closed upon the evidence brought out on the trial. Other questions grow out of the evidence, which I do not intend shall escape me. Now, we are considering whether, according to its face, the law, that is, the Act of 1818, will condemn this deed of assignment. The provision that the balance shall be subject to their order, leaves that balance just where it would have been without it. Without such provision, it would have been subject to their order, unless arrested in the hands of J. R. Clapp, by creditors, upon proceedings instituted; and with, or without it, creditors would have the right, by garnishment or by bill in Equity, to arrest, and by judgment of law to appropriate it to their debts. Of this there can be no doubt. It is true, that if before the creditor has arrested the balance, it is drawn out by the assignor, his remedy against it, in the hands of the assignee, would be gone; but in that event, he would have the same rights in it, and the same remedies to enforce his rights against the assignor, that he

has in regard to any other effects in his hands; and if it does go back into the hands of the assignor, the presumption of the law is, that it is then subject to the law for the benefit of creditors—just as all his effects are there before any assignment. And if the debtor should, by order, appropriate the balance to the payment of other debts, (as was done in this case,) before other creditors had taken any steps to appropriate it, their right to apply it to their debts, as a fund belonging to the assignor, in the hands of the assignee, would also cease. But, in relation to such or any other control over the surplus expressly reserved by this deed to the grantor, it may be remarked, that that control would be devolved upon him by law, without any such reservation. The surplus would belong to him; it would be subject to his order; and the assignee would be bound to account to him; and he would have the same right of disposing of it, as he has of any part of his estate, not assigned. If these things are so; if the creditors may pursue and apply the surplus, either in the hands of the transferree, or in the hands of the grantor; if it is returned to him, the deed avoids *that* which alone is made to invalidate it, by the Act of 1818, to wit: a trust for the benefit of the grantor or other person appointed by him. In the necessary legal view of it, it contains no trust reserving the surplus of the assigned effects for the use of the grantor, or for the use of his appointee, in derogation of the rights of creditors. Their rights in it, with the means of asserting them, remain. If it be true, then, that the promise by the assignee to account for the surplus, in *Carey vs. Giles*, and the stipulation in this case, that the surplus, shall be subject to the order of the assignors, do not make the assignments in legal effect different from what they would be without such promise and stipulation, then incontrovertibly they are valid assignments, *unless* the mere fact that there is a surplus, will, *per se,* invalidate them. In *Carey vs. Giles*, we held that this fact, apparent on the face of the instrument, would not, in the judgment of the law, annul it. The contrary holding would be absurdly unreasonable. The fact, that to secure or pay a debt, the debtor transfers notes and accounts nominally in amount

larger than the debt, does not, upon the reasoning before exhibited, create a trust for his, or his appointee's benefit.   We have seen, that if there is a balance, it is susceptible of appropriation, by legal process, to the claims of other creditors.   And I repeat, that the only test of the invalidity. of an assignment under the Act of 1818, is such a trust.   It is the law of this Court that, notwithstanding the Act of 1818, a debtor may *bona fide* pay or secure one debt, to the exclusion of others.   Now, can this be done fully, by an assignment of notes and accounts of uncertain availability, or property of uncertain value, (and such is the character of effects in most cases,) if the debtor be limited in his assignment, to the precise amount, in the nominal value of notes and accounts; or in the present valuation of property, of the debt paid or secured thereby?   Shall he not be at liberty to provide against the fluctuations in the market value of property, against the unavailability of notes and accounts, and for the costs and expenses necessarily incident to the execution of the assignment?   On this point, we do not hesitate.   Our opinion in this regard, in *Carey vs. Giles,* stands the law of this Court.

[4.] Nor does the declaration of trust, made in this case, forbid the construction which we have put upon the deed, or prevent the application of it, to the principles settled in *Carey vs. Giles.*   That declaration is *vox preteria nihil.*   What is it?   It is, that the creditor to whom the effects are assigned, shall hold the same in trust to pay himself. . For that purpose, the deed had before declared that it was made.   For that purpose, the legal title to the effects was conveyed to him.   He would have been a trustee of these effects for that purpose, without this supererogatory declaration.   Admit it to have created an express trust.   What then?   A trust to pay his own debt is not the damning trust of the Act of 1818.   It is a trust wholly guiltless of sin against that Statute.   It was a trust that died in the moment of its birth; for when the deed was created, both the legal title to the effects and the. beneficial interest in them, to the amount of his debts, united in the assignee.   This is the only trust declared in the deed.   After declaring that the effects shall

be held in trust, that their proceeds may be applied to the cred-it of the claims enumerated in favor of J. R. Clapp, it proceeds to say simply, that if, after the payment of the principal and in-terest of those claims, and the costs of collection, there is a sur-plus of money, or of effects, it shall be subject to their (the grant-or's) order. This is the statement of a stipulation, and not a de-claration of a trust. But let it be admitted that it was the inten-tion of the grantors to say, that this surplus, if any, should be held by the assignee in trust, to be subject to their order, and then the legal effect would be the same. That would be a per-fectly innocuous trust—just such a trust as the law would have created, without any declartion—a trust that secures nothing to the grantors, and which would not, in the least, hin-der or obstruct the rights of other creditors. If the assignee was a trustee of this surplus for the assignors, and they had other creditors, the law unquestionably would not, for that rea-son, withhold the surplus from their claims. A Court of Chan-cery would, without doubt, subrogate the creditors to the position of the debtors, and hold, that the legal title was in the trustee for their (the creditors') benefit. In this view of it, we are clear that it was not a trust for the benefit of the debtor against the rights of his creditors. Much stress was laid upon the idea that this reservation clause created a trust in J. R. Clapp, for the benefit of other preferred creditors, because it was practicable by virtue of this deed and orders contemporaneous with it, in favor of other creditors, and accepted by the assignee, to prefer them.

[5.] Now, if there is a trust created in J. R. Clapp, for the benefit of one or more of the creditors, we admit that upon *that* we would lay our hand; and upon *that*, we would be obliged to predicate a judgment of nullity. Upon that very ground went the case of *Ezekiel & Dixon*—the case most strongly relied up-on by the able counsel for the plaintiff in error. There the prop-erty was conveyed to *Dixon & Lichton* in trust, for the benefit of certain other creditors, who were to release the grantors, to the exclusion of all others. It was a *trust* for the benefit of appoin-tees of the debtor, and within the very letter of the Act of 1818. 3 *Kelly*, 146. But clearly that is not this case. The deed

makes no trust for other persons; it creates no trust for any creditor but the one paid, and who would have been paid without it, to wit: J. R. Clapp. This idea of the counsel is born of the evidence, and not of the deed. We are not considering the facts proven, but putting a legal construction upon the deed. And we sustain it, consistently, as we believe, with all our rulings, in relation to the Act of 1818.

[6.] Another and very different question arises out of the evidence which was had on the trial—a part of which evidence is the deed of assignment, and that is—was the conveyance void under the 13*th Elizabeth*, against fraudulent conveyances to hinder or delay creditors? or was it void for fraud at Common Law? for all fraudulent deeds are void, aside from the Statute, by the principles of the Common Law. It was proven, on the trial of the traverse of the answer of J. R. Clapp, by the admissions in that answer, and by other evidence, that when the deed was executed, the firm of *Lively & Clapp* were insolvent; that they owed to the plaintiff in the garnishment, Col. Banks, seven or eight thousand dollars; that the debt due by them to the assignee, J. R. Clapp, amounted to some $3,600; that the effects conveyed to him amounted to some $8,340; that after the execution of the deed, and before the date of the garnishment, *Lively & Clapp* had drawn upon him, in favor of divers creditors, to an amount larger than the difference between his debt and the whole amount of the effects, and which orders or drafts he had accepted, to be paid according to the exigency of the several drafts, out of such surplus as might remain after he was paid, and that no order was given by them for any part of Banks' debt. Upon this evidence, it was the province of the Jury to determine whether the deed was fraudulent, as to Banks, or not; that is, whether, under the 13*th Elizabeth*, it was made with *intent* to hinder and delay him as a creditor. It was the duty of the Court to leave this question, with proper instructions, to them. He did leave it to them, for he instructed them that the deed was valid, *unless* they should find that it was intended to hinder and delay creditors. Whether he gave them correct instructions as to what would constitute a fraud, or as

to the *indicia* of fraud, does not appear.   We are bound to presume that his instructions were satisfactory to the plaintiff in error, since he makes no exception in relation to these matters. It is, therefore, impossible to send this case back. upon these grounds.   We cannot assume the functions of the Jury, and revoke a verdict rendered, as the record and the law compels us to presume, under correct instructions as to the law of the case, from the Court.   I do not hesitate to say that, sitting as a Juror, I could not sustain this deed; for it is my deliberate opinion, that although this deed is, upon its face, valid, under the Act of 1818, yet the transaction elucidated and developed by the testimony, is in violation of the spirit of that Act, and also void by the Statute 13*th Elizabeth.*   And in this opinion, I think I may safely say that my learned brothers concur.

In *Carey vs. Giles,* whilst we held that the difference between the debt, the cost, and 2 per cent. allowed for collections, on the one hand, and the amount of the effects assigned on the other, was so small as not to be more than sufficient to cover probable unavalability; and therefore, not a badge of fraud of such mark and significances as to justify a finding of the Jury against the transaction; yet that the fact of transferring more than sufficient to pay the debt, was a badge of fraud.   We affirm that position.   When the difference is so great, as to indicate a purpose beyond that of securing the debt or debts, specified in the assignment, with the costs of executing it, it becomes a badge of pregnant import, as in this case, where the amount conveyed is double the debt and the probable cost.   If to this almost conclusive badge, is added the giving of orders upon the surplus, equal to its utmost possible amount, to favored creditors, directly after the execution of the deed, and before it is presumed that excluded creditors could have had any knowledge of this assignment the evidence becomes irresistible, that the intent of the debtors was to hinder and delay, and finally defeat the excluded creditors.   We say farther, that it is not the purpose of this Court to permit the Act of 1818 to be evaded by an assignment, which upon its face, upon legal principles, is not obnoxious to that Act; yet so framed as to be the means, through

subsequent acts of the parties, of violating its spirit. We will permit the *intent to evade the Act*, to be inquired into, upon the evidence, by the Jury. We hold it to be the right of the excluded creditors, who may be before the Court, to have that issue presented by the Court to the Jury. The construction of the deed or other instrument of assignment, is a question of law for the Court. What I mean to say is, that in cases where upon its face, the deed may be sustained, yet, whether · the grantor intended to create a trust for his own benefit, or for the benefit of others, is a fact to be submitted to the Jury, upon such evidence, in connection with the deed, as the parties may command, and as, according to the usual rules, is admissible.

Let the judgment be affirmed.